## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORGE OQUENDO | : |
| Plaintiff | : |
| v. | : |
| THE CITY OF HARTFORD, A MUNICIPAL CORPORATION; and in their individual capacities ABHILASH PILLAI; JOHNNY MUNIZ ALEXANDER ESTRELLA; ARBER GASHI, And MICHAEL TAYLOR | : |
| Defendants. | : May 20, 2022 |

## **COMPLAINT**

Plaintiff Jorge Oquendo alleges as follows:

1. Plaintiff Jorge Oquendo at all relevant times was a resident of the state of Connecticut.

2. As a result of a series of unconstitutional and reckless actions undertaken by the defendant officers and detectives for the City of Hartford, Hartford Police Department on May 22, 2019, Mr. Oquendo has been irrevocably harmed.

### Subject Matter Jurisdiction and Venue

3. Jurisdiction over Plaintiffs' claims is based on 42 U.S.C. § 1983, 28 U.S.C. § 1331 and §1343 (federal question), and 28 U.S.C. § 1367 (pendent claims).

4.   Plaintiff Oquendo brings this action claiming deprivations of rights to be free from the use of excessive force and cruel and unusual punishment under the Fourth and Eighth Amendments to the Constitution of the United States of America.

5.   Venue in this District is proper under 28 U.S.C. § 1391 because Defendants, at all times relevant to the complaint, are in based in the district and all activities relevant to this complaint occurred in this District.

### Parties

6.   Defendant Abhilash Pillai, at all times relevant to this action, was and remains a detective working for the City of Hartford Hartford Police Department (hereinafter "HPD") in the state of Connecticut. He is sued in his individual capacity only.

7.   Defendant Alexander Estrella, at all times relevant to this action, was and remains a detective working for HPD in the state of Connecticut. He is sued in his individual capacity only.

8.   Defendant Johnny Muniz, at all times relevant to this action, was and remains a detective working for the HPD in the state of Connecticut. He is sued in his individual capacity only.

9.   Defendant Arber Gashi, at all times relevant to this action, was and remains an officer working for the HPD in the state of Connecticut. He is sued in his individual capacity only.

10. Defendant Michael Taylor at all times relevant to this action, was and remains an officer working for the HPD in the state of Connecticut. He is sued in his individual capacity only.

11. Defendant City of Hartford, Hartford Police Department (again "HPD") at all times relevant to this complaint, was a municipal corporation with a seat of government located at 550 Main Street, Hartford, Connecticut.

12. Each defendant was acting under color of law at all times relevant to this action.

**Personal Jurisdiction**

13. This Court has personal jurisdiction over all Defendants in this case as this case arises out of federal question jurisdiction, 28 U.S.C. § 1331, for the 42 U.S.C. § 1983 claims, and pendant jurisdiction, 28 U.S.C. § 1367, for the state law claims.

**General Allegations**

14. Plaintiff Oquendo was a 34-year-old Hartford resident on May 22, 2019.

15. On the morning of May 22, 2019, Defendants Pillai, Estrella, Muniz, and Gashi were all on duty as detectives and officers working for the HPD in the State of Connecticut.

16. Defendant HPD is required to train officers and detectives in the use of force and vehicular pursuit.

17. Defendant HPD has a policy instructing officers how to engage in the pursuit of fleeing vehicles which prohibits officers from using police vehicles to ram fleeing suspect vehicles.

18. Upon information and belief, Defendant HPD has written training materials related to this policy on the pursuit of fleeing vehicles that trains officers and detectives not to use police vehicles to ram into fleeing motor vehicles.

19. Upon information and belief, Defendant HPD has unwritten customs and practices of using police vehicles to as impact weapons to ram into fleeing vehicles, and then to write on the police reports, uniform arrest reports and incident reports that the police vehicle was struck by the fleeing vehicle.

20. Defendant HPD's use of force report does not even contain a section allowing an officer to report a motor vehicle as an instrument of force.

21. Upon information and belief, Defendant HPD does not discipline nor re-train officers who Defendant HPD knows utilize motor vehicles instruments of force.

3

22. Defendant HPD has a policy instructing officers how to engage in the pursuit of fleeing vehicles which includes the use of spike sticks, which are tools used by law enforcement agencies to pop the tires of fleeing vehicles.

23. A Stop Stick is a brand of spike stick. A Stop Stick contains hollow Teflon coated spikes which pierce tires and act as valves to release the air from the tire and disable the fleeing vehicle.

24. Upon information and belief, spike sticks are not meant for use on a human body, and none of the training literature produced by Stop Stick, LTD., the company which manufactures the brand of spike stick used by Defendant HPD indicates the spike stick is approved as an impact weapon for use upon a human body. Spike sticks are expressly designed for use on motor vehicle tires.

25. Upon information and belief, Defendant HPD has written training materials related to this policy on the pursuit of fleeing vehicles that trains officers and detectives to use spike sticks to stop fleeing motor vehicles.

26. Upon information and belief, Defendant HPD has unwritten customs and practices of using spike sticks as impact weapons on the human body.

27. Upon information and belief, Defendant HPD does not discipline nor re-train officers who Defendant HPD knows utilize spike sticks as weapons against suspects.

28. Defendant HPD has a policy instructing officers how to write reports honestly and under oath.

29. Defendant HPD has failed to train officers properly how to write reports honestly and what the obligations of an oath are.

30. On May 22, 2019, Plaintiff Oquendo was the subject of a narcotics investigation by the Defendant HPD Vice and Narcotics Unit.

31. At about 1:01 pm May 22, 2019, Defendant Pillai, driving an unmarked black sport utility vehicle, followed Plaintiff Oquendo in his black Acura sedan for several miles starting on Wilson Street, Hartford. Plaintiff Oquendo proceeding down Brookfield Street, to Hamilton Street, across New Park Avenue, through parts of the West End of Hartford to Warrenton Street then onto Prospect Avenue, where Plaintiff Oquendo pulled into the parking lot of 577-579 Prospect Avenue, which is in West Hartford.

32. All Defendants were in radio contact as Defendant Pillai pursued Plaintiff Oquendo.

33. Defendant Estrella and Defendant Muniz were in the vicinity.

34. By the time Plaintiff Oquendo pulled into the apartment building parking lot via a driveway that was wide enough for one vehicle, a decision to "take down" or arrest Plaintiff Oquendo had been made.

35. Defendant Estrella and Defendant Muniz arrived at the parking lot at 577-579 Prospect Avenue in an unmarked police vehicle, a Chevrolet Impala with lights and sirens.

36. Defendant Taylor drove an unmarked Ford Explorer with lights and sirens. Defendant Gashi was the passenger in Defendant Taylor's unmarked vehicle.

37. Defendant Taylor wore a body camera that had no sound on it for the first few minutes.

38. Defendants Estrella and Muniz were the first to attempt to stop Plaintiff Oquendo's vehicle in the parking lot at 577-579 Prospect Street.

39. Defendant Taylor pulled the unmarked Explorer into the back parking lot at 577-579 Prospect Street, saw Plaintiff Oquendo's car was moving and rammed the front of Plaintiff Oquendo's vehicle.

40. Defendant Taylor's body camera video shows his hands moving quickly to reposition the steering wheel so his unmarked police vehicle can ram Plaintiff Oquendo's car.

41. Defendant Gashi also wore a body camera, the sound of which was not turned on until one minute into the video, well after ramming Plaintiff's vehicle.

42. Both Defendant Taylor's and Defendant Gashi's body camera videos show the consequences of the impact of Defendant Taylor ramming into Plaintiff Oquendo, namely, the Explorer jumps.

43. When Defendant Taylor stopped the Explorer after the impact, Defendant Gashi jumped out of the Explorer with a Stop Stick in his left hand. Defendant Muniz followed him. Defendant Taylor then turned the Explorer around, and proceeded to drive out the driveway. He stopped and jumped out of the Explorer.

44. At the same time, Defendant Pillai pulled his unmarked SUV into the driveway at 577-579 Prospect Avenue to block the single lane driveway and Plaintiff Oquendo's exit with his vehicle.

45. Defendant HPD knew or should have known Defendant Pillai has a history of using a motor vehicle as a weapon to ram into fleeing vehicles.

46. Defendant Pillai rammed into Plaintiff Oquendo, who was attempting to evade capture. The impact of Defendant Pillai driving his SUV into Plaintiff Oquendo's sedan caused airbags to go off in both vehicles.

47. After Defendant Pillai rammed his vehicle into Plaintiff Oquendo's vehicle, both cars were disabled, Plaintiff Oquendo could not open his door and attempted to exit the vehicle through the window. Defendant Gashi ran up to the driver side rear quarter panel of Plaintiff Oquendo's vehicle and threw a Stop Stick directly underneath Plaintiff Oquendo's body as he fell out the car window.

48. Defendant Gashi's body camera video clearly shows him tossing the Stop Stick with a practiced hand and an experienced intent.

49. Defendant Gashi knew the spike stick was not intended for use on the human body, but Defendant Gashi threw the spike stick perfectly beneath Plaintiff Oquendo with the express, knowing intent to harm and inflict pain on Plaintiff Oquendo.

50. Defendant Gashi knew the use of the spike stick to immobilize Plaintiff Oquendo as he fell from the car window was excessive force.

51. Plaintiff Oquendo landed directly on the spike stick, and suffered multiple painful puncture wounds because of this.

52. Defendant Muniz had a Stop Stick in his hand and he ran right behind Defendant Gashi. Defendant Muniz threw his stop stick to the ground and jumped on Plaintiff Oquendo, who was lying on the blacktop, impaled on spike stick beneath him. Defendant Muniz kneeled on top of Plaintiff Oquendo and started punching him in the head.

53. Defendant Gashi, with the assistance of Defendant Muniz, handcuffed Plaintiff Oquendo and Plaintiff Oquendo was made to sit with his hands cuffed behind his back, facing the driver's side door of his disabled vehicle.

54. Defendant Pillai emerged from his totaled SUV and walked up to the sitting Plaintiff Oquendo and with his police radio in his right hand, struck Plaintiff Oquendo in the head and neck area with the police radio.

55. At that precise moment, Defendant Gashi reflexively covered the lens of his body camera with his hand.

56. Defendant Taylor at some point covers the lens of his body camera as well.

57. Because Defendant Gashi and Defendant Taylor covered the lenses of their body cameras, any evidence of additional assaults on Plaintiff Oquendo does not exist.

58. Defendant Gashi's body camera captured Plaintiff Oquendo yell in pain at Defendant Pillai's blow with the radio, and say "Ow why you hit me?" and for several more seconds, captures Plaintiff Oquendo saying "He hit me" and someone, presumably Defendant Pillai responds "Oh I hit you?" The video then captured the voice of Plaintiff Oquendo saying, repeatedly, "He keep hitting me."

59. At 2:40 in the video, Defendant Gashi's left hand turns the sound off on his body camera.

60. Defendant Gashi, on his use of force report and in his incident supplement report, did not indicate his use of the Stop Stick as a weapon to hurt Plaintiff Oquendo. Defendant Gashi's use of force report did not indicate that Plaintiff Oquendo had any puncture wounds.

61. Defendant Gashi, both in his use of force report and his incident supplement, misrepresented the manner in which the excessive force was used to apprehend Plaintiff Oquendo.

62. Defendant Gashi knowingly made statements on his use of force report and his incident supplement which were not true.

63. Defendant Gashi knowingly made these untrue statements for the purpose of inducing his superiors and investigating officers to accept the use of force upon Plaintiff Oquendo as within the parameters of Defendant HPD policies and procedures.

64. Defendant Pillai's use of force reports and his incident reports do not indicate that he used a motor vehicle as a weapon to assault and ram Plaintiff Oquendo with the unmarked police vehicle.

65. Defendant Pillai's use of force reports and his incident reports indicate that Plaintiff Oquendo was actively fleeing when he used the radio as a blunt instrument. This was not true, as Plaintiff Oquendo was apprehended, seated and in handcuffs, surrounded by HPD officers.

66. Defendant Pillai, both in his use of force report and his incident supplement, misrepresented the manner in which the excessive force was used to apprehend Plaintiff Oquendo.

67. Defendant Pillai knowingly made statements on his use of force report and his incident supplement which were not true.

68. Defendant Pillai knowingly made these untrue statements for the purpose of inducing his superiors and investigating officers to accept the use of force upon Plaintiff Oquendo as within the parameters of Defendant HPD policies and procedures.

69. Upon information and belief, neither Defendant Taylor did not file a use of force report indicating that he rammed Plaintiff Oquendo's vehicle with the unmarked Ford Explorer.

70. It was not until an assistant chief at Defendant HPD compared the body camera video with the use of force reports that an investigation was initiated in September 2019.

71. When a blogger in October 2019 reported that the Hartford State's Attorney's Office was investigating the propriety of the use of force against Plaintiff Oquendo, Defendant Pillai communicated with the blogger and caused the blogger to write a correction online, stating "The entire incident was properly documented according to a conversation I had by phone with Detective Pillai."[1]

72. Upon information and belief, Defendant Gashi received a suspension for his conduct.

73. Upon information and belief, Defendant Pillai received a suspension for his conduct.

**Count I – 42 U.S.C. § 1983 Excessive Force as to Defendant Pillai**

74. Paragraphs 1 through 73 are incorporated by reference as if more fully set forth herein.

---

[1] http://wethepeoplehartford.blogspot.com/2019/10/hpd-detective-under-investigation-by.html

75. As more fully described above, force employed by Defendant Dadio in beating a handcuffed and shackled Plaintiff Matta was grossly excessive and unjustifiable.

76. Under the color of law, Defendant Dadio applied force and violence to E. and that application of force and violence was unlawful.

77. Plaintiff Matta has been damaged by the excessive force employed by Defendant Dadio.

78. In the manner described above, Defendant Dadio subjected the plaintiff to unreasonable force in violation of rights secured to the plaintiff by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count I of this Complaint, Plaintiff demands judgment against Defendant Dadio and prays for: (1) compensatory damages; (2) Punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count II - 42 U.S.C. § 1983 Conspiracy to Use Excessive Force as to Defendant Gashi**

79. Paragraphs 1 through 78 are incorporated by reference as if more fully set forth herein.

80. As more fully described above, force employed by Defendant Gashi in beating a handcuffed and shackled Plaintiff Matta was grossly excessive and unjustifiable.

81. Under the color of law, Defendant Gashi applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

82. Plaintiff Oquendo has been damaged by the excessive force employed by Defendant Gashi.

83. In the manner described above, Defendant Gashi subjected the plaintiff to unreasonable force in violation of rights secured to the plaintiff by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count II of this Complaint, Plaintiff demands judgment against Defendant Gashi and prays for: (1) compensatory damages; (2) Punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count III - 42 U.S.C. § 1983 Excessive Force as to Defendant Muniz**

84. Paragraphs 1 through 83 are incorporated by reference as if more fully set forth herein.

85. As more fully described above, force employed by Defendant Slaven in beating a handcuffed Plaintiff Oquendo was grossly excessive and unjustifiable.

86. Under the color of law, Defendant Muniz applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

87. Plaintiff Oquendo has been damaged by the excessive force employed by Defendant Muniz.

88. In the manner described above, Defendant Muniz subjected the plaintiff to unreasonable force in violation of rights secured to the plaintiff by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count III of this Complaint, Plaintiff demands judgment against Defendant Muniz and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count IV - 42 U.S.C. § 1983 Excessive Force as to Defendant Taylor**

89. Paragraphs 1 through 88 are incorporated by reference as if more fully set forth herein.

90. As more fully described above, force employed by Defendant Taylor in ramming the unmarked police vehicle into Plaintiff Oquendo's vehicle was grossly excessive and unjustifiable.

91. Under the color of law, Defendant Taylor applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

92. Plaintiff Oquendo has been damaged by the excessive force employed by Defendant Taylor.

93. In the manner described above, Defendant Taylor subjected the plaintiff to unreasonable force in violation of rights secured to the plaintiff by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count IV of this Complaint, Plaintiff demands judgment against Defendant Taylor and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count V - 42 U.S.C. § 1983 Cruel and Unusual Punishment as to Defendant Pillai**

94. Paragraphs 1 through 93 are incorporated by reference as if more fully set forth herein.

95. The force employed by Defendant Pillai in beating a handcuffed Plaintiff Oquendo was an unnecessary and wanton infliction of pain.

96. Plaintiff Oquendo posed no threat, and there existed no need for this type of application of force.

97. The force employed by Defendant Pillai in beating a handcuffed Plaintiff Oquendo was an extrajudicial punishment for attempting to flee the police, and said beating was malicious and sadistic.

98. Defendant Pillai knowingly and willfully intended that the harm occur to Plaintiff Oquendo, especially where Defendant Pillai acted with a culpable state of mind, understanding that it was an unjustifiable infliction of harm.

99. In the manner described above, Defendant Pillai subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count V of this Complaint, Plaintiff demands judgment against Defendant Pillai and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count VI - 42 U.S.C. § 1983 Cruel and Unusual Punishment as to Defendant Gashi**

100. Paragraphs 1 through 99 are incorporated by reference as if more fully set forth herein.

101. The force employed by Defendant Gashi in using the spike stick to apprehend Plaintiff Oquendo was an unnecessary and wanton infliction of pain.

102. Plaintiff Oquendo posed no threat, and there existed no need for this type of application of force.

103. The force employed by Defendant Gashi in using a tool designed to puncture car tires to immobilize a human being like Plaintiff Oquendo was an extrajudicial punishment for attempting to flee the police, and said beating was malicious and sadistic.

104. Defendant Gashi knowingly and willfully intended that the harm occur to Plaintiff Oquendo, especially where Defendant Gashi acted with a culpable state of mind, understanding that it was an unjustifiable infliction of harm.

105. In the manner described above, Defendant Gashi subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VI of this Complaint, Plaintiff demands judgment against Defendant Gashi and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count VII – 42 U.S.C. § 1983 Cruel and Unusual Punishment as to Defendant Muniz**

106.    Paragraphs 1 through 105 are incorporated by reference as if more fully set forth herein.

107.    The force employed by Defendant Muniz in punching Plaintiff Oquendo was an unnecessary and wanton infliction of pain.

108.    Plaintiff Oquendo posed no threat, and there existed no need for this type of application of force.

109.    The force employed by Defendant Muniz in beating an apprehended Plaintiff Oquendo was malicious and sadistic.

110.    Defendant Muniz knowingly and willfully intended that the harm occur to Plaintiff Oquendo, especially where Defendant Muniz acted with a culpable state of mind, understanding that it was an unjustifiable infliction of harm.

111.    In the manner described above, Defendant Muniz subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VII of this Complaint, Plaintiff demands judgment against Defendant Muniz and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count VIII – 42 U.S.C. § 1983 Cruel and Unusual Punishment as to Defendant Taylor**

112.     Paragraphs 1 through 112 are incorporated by reference as if more fully set forth herein.

113.     The force employed by Defendant Taylor in ramming his car into Plaintiff Oquendo represents an aggravated assault with a motor vehicle that is not permissible under Defendant HPD policy, and it was an unnecessary and wanton infliction of pain.

114.     This aggravated assault with a motor vehicle was not permissible, and there existed no need for this type of application of force.

115.     The force employed by Defendant Taylor in ramming Plaintiff Oquendo's car was malicious and sadistic.

116.     Defendant Taylor knowingly and willfully intended that the harm occur to Plaintiff Oquendo, especially where Defendant Taylor acted with a culpable state of mind, understanding that it was an unjustifiable infliction of harm.

117.     In the manner described above, Defendant Taylor subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VIII of this Complaint, Plaintiff demands judgment against Defendant Colon and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count IX – 42 U.S.C. § 1983 Conspiracy to Use Excessive Force and Cruel and Unusual Punishment

118.     Paragraphs 1 through 117 are incorporated by reference as if more fully set forth herein.

119.     Defendants Pillai, Muniz, Estrella, Taylor and Gashi all agreed to help the others commit constitutional violations and to protect each other from the consequences of using excessive force and cruel and unusual punishment.

120.     Defendants Pillai, Muniz, Estrella, Taylor and Gashi all agreed that a suspect who flees from pursuing police officers should be and must be subjected to excessive force and cruel and unusual punishment.

121.     Defendants Pillai, Muniz, Estrella, Taylor and Gashi all acted upon this agreement, and took steps in furtherance of this agreement to protect each other from the consequences of using excessive force and cruel and unusual punishment, to wit:

a.   Defendants Pillai, Muniz, Taylor and Gashi actively took steps to violate Plaintiff Oquendo's civil rights with excessive force and cruel and unusual punishment;

b.   Defendants Pillai, Muniz, Estrella, Taylor and Gashi all witnessed each other engaged in unlawful conduct like assault and battery upon Plaintiff Oquendo and did not take affirmative action to either report what they witnessed or to actually stop such unconstitutional actions from occurring;

c.   Defendants Taylor and Gashi manipulated their body cameras to prevent the creation of evidence which would implicate other officers in illegal conduct; and

16

    d.  Defendants Pillai, Muniz, Estrella, Taylor, and Gashi all submitted incorrect, inaccurate reports, some under oath, to both the Hartford Police Department and to the West Hartford Police Department.

122.    Defendants Pillai, Muniz, Estrella, Taylor and Gashi all acted in concert to protect each other from the consequences of their violating Plaintiff Oquendo's rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive force and to be free from cruel and unusual punishment and Plaintiff's rights to enjoy protection from harm by Defendants Pillai, Muniz, Estrella, Taylor and Gashi covering up beatings and assaults that Plaintiff Oquendo was subjected to.

123.    Plaintiff Oquendo has been harmed by Defendants Pillai, Muniz, Estrella, Taylor and Gashi.

WHEREFORE, on Count IX of this Complaint, Plaintiff demands judgment against Defendants Pillai, Muniz, Estrella, Taylor and Gashi and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count X – Assault and Battery as to Defendant Pillai**

124.    Paragraphs 1 through 123 are incorporated by reference as if more fully set forth herein.

125.    Under the color of law, Defendant Pillai applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

126.    Defendant Pillai intended that Plaintiff Oquendo apprehend imminent harmful and offensive physical contact by Defendant Pillai.

127.       Defendant Pillai intended to take action to injure Plaintiff Oquendo.

128.       Plaintiff Matta's injuries are the intended result of Defendant Dadio's actions to pepper spray Plaintiff Matta, and then assault and kick and punch him.

129.       Defendant Pillai acted willfully and wantonly and sought to injure Plaintiff Oquendo without just cause or excuse.

130.       Defendant Pillai understood that his actions in beating a handcuffed Plaintiff Oquendo constituted a breach of Defendant Pillai's duties to Plaintiff Oquendo and Defendant Pillai wrote an incorrect report about the incident.

131.       Defendant Pillai harmed Plaintiff Oquendo.

WHEREFORE, on Count X of this Complaint, Plaintiff demands judgment against Defendant Pillai and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count XI – Assault and Battery as to Defendant Gashi

132.       Paragraphs 1 through 131 are incorporated by reference as if more fully set forth herein.

133.       Under the color of law, Defendant Gashi applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

134.       Defendant Gashi intended that Plaintiff Matta apprehend imminent harmful and offensive physical contact by Defendant Gashi.

135.       Defendant Gashi intended to take action to injure Plaintiff Oquendo.

136.       Plaintiff Oquendo's injuries are the intended result of Defendant Gashi's actions to throw the spike stick beneath Plaintiff Oquendo as he tumbled out of the car window.

137.     Defendant Gashi acted willfully and wantonly and sought to injure Plaintiff Oquendo without just cause or excuse.

138.     Defendant Gashi understood that his actions in throwing to spike stick under Plaintiff Oquendo constituted a breach of Defendant Gashi's duties to Plaintiff Oquendo and Defendant Gashi wrote an incorrect report about the incident.

139.     Defendant Gashi harmed Plaintiff Matta.

WHEREFORE, on Count XI of this Complaint, Plaintiff demands judgment against Defendant Cuffee and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

### Count XII – Assault and Battery as to Defendant Muniz

140.     Paragraphs 1 through 140 are incorporated by reference as if more fully set forth herein.

141.     Under the color of law, Defendant Muniz applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

142.     Defendant Muniz intended that Plaintiff Oquendo apprehended imminent harmful and offensive physical contact by Defendant Muniz.

143.     Defendant Muniz intended to take action to injure Plaintiff Oquendo.

144.     Plaintiff Oquendo's injuries are the intended result of Defendant Muniz's actions to assault and punch Plaintiff Oquendo.

145.     Defendant Muniz acted willfully and wantonly and sought to injure Plaintiff Oquendo without just cause or excuse.

146.     Defendant Muniz understood that beating of Plaintiff Oquendo constituted a breach of Defendant Muniz's duties to Plaintiff Oquendo and Defendant Muniz wrote an incorrect report about the incident.

147.     Defendant Muniz harmed Plaintiff Oquendo.

WHEREFORE, on Count XII of this Complaint, Plaintiff demands judgment against Defendant Muniz and prays for (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XIII – Assault and Battery as to Defendant Taylor**

148.     Paragraphs 1 through 147 are incorporated by reference as if more fully set forth herein.

149.     Under the color of law, Defendant Taylor applied force and violence to Plaintiff Oquendo and that application of force and violence was unlawful.

150.     Defendant Taylor intended that Plaintiff Oquendo apprehend imminent harmful and offensive physical contact by Defendant Taylor.

151.     Defendant Taylor intended to take action to injure Plaintiff Oquendo.

152.     Plaintiff Oquendo's injuries are the intended result of Defendant Taylor's actions of ramming his unmarked police vehicle into Plaintiff Oquendo's car.

153.     Defendant Taylor acted willfully and wantonly and sought to injure Plaintiff Oquendo without just cause or excuse.

154.     Defendant Taylor understood that his actions in initiating the ramming of Plaintiff Oquendo constituted a breach of Defendant Taylor's duties to Plaintiff Oquendo and Defendant Taylor failed to even write a report about the incident.

155.      Defendant Taylor harmed Plaintiff Oquendo.

WHEREFORE, on Count XIII of this Complaint, Plaintiff demands judgment against Defendant Taylor and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XIV – Defendant City of Hartford Monell Liability**

156.      Paragraphs 1 through 155 are incorporated by reference as if more fully set forth herein.

157.      Defendant HPD's failure to train, supervise and discipline its police officers resulted in deliberate indifference to Plaintiff Oquendo's rights.

158.      Defendant HPD knew or should have known that it would need to stop fleeing vehicles, and Defendant HPD failed to train its officers properly to prevent them from ramming vehicles.

159.      Defendant HPD knew or should have known that it would need to stop fleeing vehicles, and Defendant HPD failed to train its officers properly to prevent them from using stop sticks on human flesh.

160.      Defendant HPD knew or should have known that it would need to stop fleeing vehicles, and Defendant HPD failed to train its officers properly to prevent them from using excessive force and cruel and unusual punishment against suspects.

161.      Defendant HPD has policies in place on use of force and how to pursue fleeing vehicles, but Defendant HPD failed to train its officers properly to handle situations like this without violating the Constitutional rights of people like Plaintiff Oquendo.

162.     Defendant HPD knew or should have known that officers conspire to lie under oath, hide evidence of excessive force and cruel and unusual punishment by themselves and other officers and Defendant HPD failed to train its officers to hew to the appropriate regulations and policies and procedures when writing reports.

163.     Defendant HPD knew that officers engaged in customs and practices that went against official policy, but Defendant HPD did not act to prevent this.

164.     Plaintiff Oquendo has been damaged by the Defendant HPD and its failure to properly train officers.

WHEREFORE, on Count XIV of this Complaint, Plaintiff demands judgment against Defendant City of Hartford Hartford Police Department and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

The remainder of this page is intentionally left blank.

**Demand for Jury Trial**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Dated: May 20, 2022

Respectfully submitted,

/s/ *Kenneth J. Krayeske*
Kenneth J. Krayeske, Esq.
Kenneth J. Krayeske Law Offices
255 Main Street, Fifth Floor
Hartford, CT 06106
(860) 969-4911
FAX: (860) 760-6590
attorney@kenkrayeske.com
Federal Bar # CT28498